## PHILLIPS v. JORDON.

1. Where the indorsee of a note sues the maker and indorser jointly, under the act of 1828, defining the liability of indorsers, if he discontinue as to the maker, he not being found, it is a discontinuance as to both.
2. Where a judgment is improper, but produces the proper result, it should not be reversed.
3. Whether the Court can order a nonsuit—*Quere.*

IN February, 1828, John Blevins made his promissory note payable on the 25th December, to one J. Hutchison, for $380. On the 4th of March, 1828, Hutchison indorsed the note to Uriah Jordon, and on the same day Jordon indorsed it again to George Phillips. In March, 1829, Phillips brought his action of debt in Shelby Circuit Court, against Blevins and Jordon, under the provisions of the act of 1828, which requires the maker and indorser to be joined in the same action. The sheriff returned the writ executed as to Jordon and made no return as to Blevins. The plaintiff filed his declaration against Jordon, discontinuing the action as to Blevins, and Jordon pleaded the general issue. At the November term, 1829, judgment was entered as follows: "This day came the parties by their attorneys, and the plaintiff discontinues his suit as to John Blevins, and thereupon came a jury, to wit: Enoch Carson and eleven others, who being elected, tried and sworn well and truly to try the issue joined; and it is considered by the Court that the plaintiff be non-suited. It is therefore considered by the Court that the defendant go hence without day, and recover his costs, &c."

Phillips, in this Court assigns for error, that the Court below erred in ordering the non-suit.

MARDIS, for the plaintiff in error. Two questions arise in this case. 1st. Had the Court the authority to direct that the plaintiff should be non-suited in such a case as this; and 2dly. If the Court had the power, was it proper in this case? In the case of *Smith, Adm'r. v. Seaton, a* this Court decided that it was error in the Court to non-suit except in cases expressly provided for by statute; and there is but one case where the statutes authorize it, it is where an indorsee in an action against an indorser fails to prove demand and notice. *b* But under the act of 1828, demand and notice are not necessary, so this case cannot be brought within the provisions of the act of 1807. This decision it seems to me is decisive of the first question.

*a* Minor's Ala. Rep. 75.

*b* Act of 1807. Laws of Ala. page 68; section 4.

The second question involves the construction of the act of 1828, defining the liability of indorsers, &c. Among other things it enacts "that the assignee may maintain such suit thereon as the obligee or payee could have done, and may sue the maker and indorser, in the same action, whether it be debt, covenant or assumpsit, provided suit be brought to the first Court of the county where the maker resides to which suit can be brought; that if the indorsee fails to sue the maker to the first Court, as herein provided for, the indorser shall be discharged from liability." To hold the indorser responsible, he must be sued jointly with the maker, and to the first Court. Now suppose an action be commenced against the maker and indorser to the first Court after the cause of action arose; that after the issuance of the writ, and before it could be executed, the maker should go beyond the jurisdiction of the Court: The writ would be returned executed on the indorser alone. Would it be a fair construction of the statute to say that the plaintiff could not discontinue his action and proceed against the indorser alone? Must he sue out an *alias* and *pluries* writ, and continue to issue process forever for the purpose of perfecting service on the other defendant, when he is well aware it never can be done? Would not such a construction be fraught with the greatest possible injustice? It would tax the plaintiff with an accumulation of costs, endless delay, and produce no beneficial result. We have endeavored on our part, to comply with the statute in all points, and have in fact done so, as far as in our power; we have elected to

hold the indorser responsible, and have sued to the first Court, which I understand to be matter of proof at the trial, and because one of the joint defendants has withdrawn himself from the jurisdiction of the Court, we are told we must have our action suspended without end, or go out of Court and pay a bill of costs; and this is not all, but we must lose our remedy against the indorser altogether, for we are unable then to sue the maker either by attachment or otherwise, so as to bring ourselves within the statute. Although I have no reverence for the provisions of the statute, I conceive such a construction of it to be intolerable. Again, suppose the maker to die after the issuance of the writ and before it could be served, and to have left no effects to be administered; is the indorser in this case, or in the case of the maker absconding, to be discharged from liability? I should apprehend not.

The third section of the act is relied on as conclusive against us. It provides, "that in all cases where judgment shall be rendered against the maker and indorser, it shall be rendered to be levied of the property of the principal, if so much can be found, if not, then against the indorser, and execution to issue accordingly." Is there any thing in this section inhibiting the plaintiff from having judgment against the indorser separate and apart from the maker? Assuredly not. The statute only points out the mode of entering judgments where both are included, and to my mind shews most conclusively the liability of the indorser wherever the maker fails to discharge the note, no matter from what cause, whether the want of property or ability to do so, or because he has evaded the process of the Court. The legal effect of the undertaking of the indorser under the statute should be construed to be, that the maker is not only able to pay, but that he will be found at the maturity of the note, within the jurisdiction of the Court to answer the demand. A different construction would enable the maker and indorser to confederate together and invariably defeat the liability of the indorser, whereby great frauds might be committed.

PECK, contra. If I am able to shew from the record, that the plaintiff could not have recovered against the defendant Jordon, and that from the peculiar situation of the cause, he was entitled to a judgment for costs against the plaintiff, though not in the form as rendered, I think I may with much plausibility insist on an affirmance, notwith-

standing the irregularity of the judgment. The statute of 1828, defining the liability of indorsers, entirely over-threw the long established doctrines of the law merchant as applied to promissory notes, and introduced into our code, new rules, both as to the manner of fixing the liability of the several parties whose names are upon the paper, as well as the mode by which that liability is to be enforced. The days of grace are abolished, and demand of payment of the maker, and notice of a refusal to pay to the indorser, are rendered unnecessary. By this statute the indorsee may sue the maker and indorser in the same action, whether it be debt, covenant or assumpsit, provided suit be brought to the first Court of the county where the maker resides to which suit can be brought; but if he fail to join the indorser in the action, he shall not have an action against him until he shall have prosecuted the maker to insolvency; and if he fail to sue the maker to the first Court, the indorser shall be discharged from liability.

A question here arises. After the indorsee has elected his mode of proceeding, and has chosen to commence his action against the maker and indorser, can he then, if the *capias* be not served upon the maker, discontinue his action as to him, and proceed to judgment against the indorser; thereby, in direct contravention of the statute, render the indorser the first person liable, and compel him, in violation of the contract of indorsement, to pay the note before the maker has been prosecuted to insolvency. If this cannot be done, the discontinuance of the suit as to the maker in this case most clearly worked a discontinuance of the whole action, and the defendant Jordon became thereby entitled to a judgment for his costs. And to prove most conclusively that the indorsee cannot discontinue his action as against the maker and still proceed against the indorser, we need only refer to the third section of the act, which shews what great caution has been used by the Legislature to protect the indorser from the payment of a note, until the property of the maker has been exhausted.

If this reasoning be not founded in error, I might safely close the argument. But to give the plaintiff the full benefit of his assignment of error, let it be admitted that the cause is uncontrolled by the act of 1828, and that the action was instituted against the defendant Jordon alone, as indorser. It is true, that the plaintiff in his declaration, although it is framed to bring the case within the statute,

JULY 1830.

Phillips
v.
Jordon.

a Minor's Ala.
Rep. 5.

does in addition, aver that at maturity a demand was made of the maker and due notice of non-payment given to the indorser. But it would not only have been necessary to aver the demand and notice in the declaration, but also the truth of this averment would be required to be made manifest by proof at the trial, to have fixed a liability on the defendant as indorser; and if the plaintiff had failed in this, the Court must have non-suited him; see *Ward v. Gifford.* [a] And as the reasons for the non-suit do not appear upon the record, this Court will presume, for the purpose of sustaining the judgment, that the plaintiff failed to fix a liability on the indorser, by proving a demand and notice, and that therefore the non-suit was entered.

By JUDGE CRENSHAW. This action was brought under the act of 1828, defining the liability of indorsers, and which requires "that in order to charge an indorser, suit must be instituted against the maker and indorser, in the same action, at the first Court to which suit can be brought; but if the plaintiff fail to join the maker and indorser, in the same action, he shall not have an action against the indorser until he shall have prosecuted the maker to insolvency; and if he fail to sue the maker to the first Court as aforesaid, the indorser shall be discharged from liability." The object of the law was clearly for the protection of indorsers, and no action can be maintained against the indorser after he has been discharged from liability, by reason of the suit not being commenced and carried on against him and the maker jointly, or by reason of not prosecuting a suit against the maker in the first instance to insolvency. The manifest object of the Legislature was to subject the property and effects of the maker, in the first instance, to the payment of the debt, before resort could be had to coerce payment from the indorser.

In the present case the action was commenced against the maker and indorser jointly, but the writ not being served on the maker, as to him the action was discontinued in the declaration. Under the statute, by operation of law, this was a discontinuance of the entire action, because by the act of discontinuing against the maker, the indorser was discharged from legal liability, and the action could not be further maintained against him. But it is said that the judgment is informal and erroneous, because it is in form a judgment of non-suit, instead of a judgment of discontinuance. In the case of *Smith v. Seaton,* in 1822,

it was determined by a majority of this Court, that except in cases provided for by statute, the Court could not order a non-suit against the consent of the plaintiff. Though I dissented from the judgment of the Court in that case, I deem it not necessary to disturb the rule then settled, in order to decide the case before us. I must however remark, that if a Court can instruct a jury as in case of non-suit, I can see no good reason why the Court should not order the non-suit in the first instance. The record does not shew that the non-suit was ordered against, or without the consent of the plaintiff. To sustain the judgment therefore, it might be presumed that the plaintiff did assent. But not relying on this ground, we are of opinion, that the action was discontinued by discontinuing against the maker; and that in effect, the judgment on the discontinuance and the judgment of non-suit are the same; therefore a majority of us are not inclined to reverse the judgment of the Circuit Court for a mere informality.

By JUDGE COLLIER. I concur with the majority of the Court in the opinion, that a discontinuance as to the maker of the note sued on, operated a discontinuance as to the defendant in error. But as the defendant pleaded to the declaration, in which the discontinuance was recited, and the case was submitted to the jury; the question whether the plaintiff in error had discontinued his action, could not legitimately present itself for the judgment of the Court. The proper course would have been, for the plaintiff after verdict, to have moved in arrest of judgment. The objection to the judgment may be considered quite technical; but let it be remarked, that the certainty of the law, and the security of rights, require that technicality should not be entirely lost sight of.

I dissent from the judgment of the Court for the reason expressed, and with me Judge White concurs.

Judgment affirmed.

Judge Taylor not sitting.